**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------- X

HAL LUFTIG                            :        Civil Action No: 22-cv-03697-LAK

                    *Petitioner*,    :

v.                                    :        **FIRST AMENDED PETITION**
                                               **TO VACATE, IN PART,**
                                               <u>**ARBITRATION AWARD**</u>

FCP ENTERTAINMENT PARTNERS, LLC,     :

                    *Respondent*.    :

------------------------------------- X

Petitioner Hal Luftig, an individual ("Hal Luftig"), by and through his attorneys Ruskin

Moscou Faltischek P.C., Martin J. Foley PLC and Jassy Vick Carolan LLP, for his First

Amended Petition to Vacate a Final Arbitration Award, dated April 1, 2022, alleges as follows:

## INTRODUCTION

1.        A person who is not a party to a contract cannot be held liable for its breach.

While arbitrating a loan-out contract dispute between two corporate entities (Respondent FCP

Entertainment Partners, LLC ["FCP ENTERTAINMENT"], a Nevada LLC and Hal Luftig, Inc.

["HLC"], a New York corporation owned by Hal Luftig), the arbitrator ruled that HLC breached

a 2007 Agreement between FCP ENTERTAINMENT and HLC.  He also ruled that Hal Luftig,

as an individual, was jointly and severally liable for breach of that contract—despite the fact Hal

Luftig was not a party to the 2007 Agreement.  The arbitrator disregarded FCP

ENTERTAINMENT'S admissions and written contentions in the arbitration that the contracting

parties were two corporate entities; namely, FCP ENTERTAINMENT and HLC.  The arbitrator

so ruled notwithstanding the absence of any alter ego allegation or any argument, let alone

evidence, related to potentially piercing HLC's corporate veil to reach Hal Luftig individually.

The arbitrator thereby held a non-party to a contract liable for its breach. This ruling was not only a clear error of law but in manifest disregard of the law.

2.      This is a First Amended Petition to Vacate the Final Arbitration Award of Mr. Robert Donnelly (the "Arbitrator") dated April 1, 2022 (the "Final Award"). The Final Award erroneously held Hal Luftig jointly and severally liable in the amount of $2,638,925.78 under the terms of a January 1, 2007 agreement between FCP ENTERTAINMENT and HLC for the identification and potential investment in the production of Broadway plays and musicals (the "2007 Agreement"), including the highly successful musical, *Kinky Boots*.

3.      Hal Luftig was not a party to the 2007 Agreement between FCP ENTERTAINMENT and HLC.

4.      Hal Luftig was employed by HLC, which entered into a loan-out agreement with FCP ENTERTAINMENT for Hal Luftig's services. The 2007 Agreement was signed by Hal Luftig in his capacity as President of HLC. While Hal Luftig personally signed an Inducement Letter to the 2007 Agreement, that Inducement Letter makes it clear that the 2007 Agreement is between FCP ENTERTAINMENT and HLC, not Hal Luftig individually. It explicitly provides that Hal Luftig could be made a party if—and only if—FCP ENTERTAINMENT made an "election" to substitute Hal Luftig individually for HLC based on the occurrence of certain specified conditions. FCP ENTERTAINMENT has never made such an election– not before initiating arbitration, nor during arbitration, nor before the issuance of the Final Award. To the contrary, FCP ENTERTAINMENT is currently seeking confirmation of the Final Award against HLC. Moreover, FCP ENTERTAINMENT's written positions during the arbitration repeatedly and unequivocally affirmed that the 2007 Agreement was solely between two corporate entities,

FCP ENTERTAINMENT and HLC—and not Hal Luftig individually.  As such, Hal. Luftig cannot be personally liable under the 2007 Agreement.[1]

5.    Paragraph 16 of the 2007 Agreement expressly stated that "[t]he [A]rbitrator shall not have the power to commit errors of law or legal reasoning …."

6.    Because Hal Luftig was not a party to the 2007 Agreement, the Arbitrator, in violation of the express arbitration provision in the 2007 Agreement, "commit[ted] errors of law and legal reasoning" by finding Mr. Luftig personally liable for the breach of the 2007 Agreement.  Moreover, the Arbitrator's ruling is not just erroneous, but constitutes a manifest disregard of the law.  It flatly violates one of the most basic, fundamental and well-established principles of contract law:  that a non-party to a contract cannot be liable for its breach

7.    Thus, the Final Award must be vacated on two independent grounds.

   a. First, the Arbitrator acted in manifest disregard of the law by holding Hal Luftig personally liable for breach of the 2007 Agreement.

   b. Second, the Arbitrator exceeded his powers under the Federal Arbitration Act, 9 U.S.C. § 10(a)(4) as interpreted by California law, by awarding damages against Hal Luftig personally based on clear "errors of law and legal reasoning," in violation of the express terms of the parties' 2007 Agreement.

8.    Accordingly, Hal Luftig's First Amended Petition and Motion, previously filed with the Court on May 6, 2022, seeks an order from this Court under the Federal Arbitration Act, 9 U.S.C. § 10, vacating the Final Award dated April 1, 2022, rendered in the Arbitration to the extent that such Final Award holds Hal Luftig personally liable for breach of contract.

---

[1] FCP ENTERTAINMENT's Arbitration only sought relief against Hal Luftig individually on a breach of fiduciary duty claim; however, the Arbitrator ruled *against* FCP ENTERTAINMENT on that breach of fiduciary duty claim and in Hal Luftig's favor.

## PARTIES

9.      Petitioner Hal Luftig is an individual who resides in New York City, New York. He receives his mail in the State of New York, is registered to vote in the State of New York, and is the sole shareholder of his business, HLC, which is located in the State of New York. Accordingly, Luftig is a citizen of the State of New York.

10.     HLC is a New York corporation, duly formed and organized in January 2000, and has its principal place of business in New York City.  Accordingly, HLC is a citizen of the State of New York.  *See* U.S.C. § 1332(c)(1) ("a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business.").

11.     Respondent FCP ENTERTAINMENT is a limited liability company formed under the laws of the State of Nevada, with a principal place of business in Washoe County, Nevada. *See E & T Skyline Constr., LLC v. Talisman Cas. Ins. Co., LLC,* 2022 WL 623858, at *5 (S.D.N.Y Mar. 2, 2022) ("An LLC is a citizen of every state of which any of its members is a citizen.").  FCP ENTERTAINMENT's sole member is either Warren Trepp ("Warren Trepp"), individually, or, based upon new allegations in FCP ENTERTAINMENT's First Amended Petition to Confirm Arbitration Award filed in the related case entitled *FCP Entertainment Partners, LLC v. Hal Luftig Company, Inc., et al.* Civil Action No. 22-cv-02768-LAK, an entity owned by Warren Trepp, Trepp Enterprises, Inc. ("TEI").  Both Warren Trepp and TEI are citizens of the State of Nevada.  *See* U.S.C. § 1332(c)(1).  Because the sole member of FCP ENTERTAINMENT is a citizen of the State of Nevada, FCP ENTERTAINMENT is a citizen of the State of Nevada.

## JURISDICTION AND VENUE

12.     The Court has subject matter jurisdiction over the action pursuant to 28 U.S.C. § 1332 because there is complete diversity between the parties to this action, and the amount in controversy exceeds $75,000, exclusive of interest and costs.  As set forth above, Petitioner Hal Luftig is a citizen of the State of New York, and Respondent FCP ENTERTAINMENT is a citizen of the state of Nevada.

13.     Venue is proper in this judicial district pursuant to 9 U.S.C. § 10(a) because the Final Award was made in the City of New York, State of New York.

## FACTS

A.  **The 2007 Agreement Between FCP ENTERTAINMENT and HLC**

14.     Beginning in the 1990s, Warren Trepp hired Hal Luftig to identify and present suitable live theater production opportunities for Warren Trepp's investment through various business entities that Trepp created and controlled.

15.     Eventually, Warren Trepp decided that it would be beneficial for one of his business entities, FCP ENTERTAINMENT, to undertake roles as a general partner or managing member of a production company, rather than simply continuing with passive investments in live theater productions.

16.     On or about January 14, 2000, Hal Luftig formed HLC for the purposes of providing his personal services to FCP ENTERTAINMENT in connection with live theatre productions with the protections against personal liability afforded by corporate formation.

17.     On or about August 16, 2001, FCP ENTERTAINMENT and HLC entered into an agreement (the "2001 Agreement") to, *inter alia*, identify potential theatrical properties for investment and possible production.

18.     Effective as of January 1, 2007, FCP ENTERTAINMENT and HLC entered into the 2007 Agreement, which amended and restated the 2001 Agreement in its entirety.  *See* Exhibit 1 (2007 Agreement).[2]

19.     The 2007 Agreement has a choice of law provision specifying that it is governed by California law.

20.     The 2007 Agreement utilizes a loan-out arrangement typical in the entertainment industry, whereby a loan-out company (here, HLC) is formed by a creative talent (here, Hal Luftig) who is often the sole owner/manager of the loan-out company.  The loan-out company then employs the creative services of an individual (here, Hal Luftig), and then enters into a contract with an outside third-party company (here, FCP ENTERTAINMENT) for the use of those creative services.  The loan-out company (HLC) is used as a means to reduce the creative individual's (Hal Luftig's) personal liability, protect the creative individual's assets and for the creative individual to enjoy certain tax advantages.  On the other side of the deal, Warren Trepp used FCP ENTERTAINMENT, an entity that he controlled, to conduct business, funnel investments, protect him from personal liability and obtain tax advantages.

21.     Under the 2007 Agreement, HLC contracted to furnish to FCP ENTERTAINMENT the full time, exclusive services of Hal Luftig.

22.     As is usual, FCP ENTERTAINMENT had Hal Luftig sign an Inducement Letter, which is attached in Exhibit 1 to the Foley Declaration.  The language of paragraph 5 of the

---

[2] All exhibits referenced in this First Amended Petition are annexed to the Declaration of Martin J. Foley, dated May 5, 2022 and filed in this proceeding on May 6, 2022 [Dkt. No. 4].   By order, dated May 19, 2022, the Court granted the parties' request that the Court adopt all papers previously filed in support of the original Petition, such as the Foley Declaration, as papers filed in support of this First Amended Petition.

Inducement Letter makes it clear that Hal Luftig is not a party to the 2007 Agreement, unless and until certain specified conditions occur (which did not happen in this case).

23.     Paragraph 5 of the Inducement Letter reads as follows:

> 5. If Lender [HLC] should be dissolved or should otherwise cease to exist or for any reason whatsoever should fail, be unable, neglect or refuse to perform and observe each and all of the conditions of the Agreement requiring performance or compliance on its part, *at your election*, I shall be deemed substituted as a direct party to the Agreement in the place and stead of Lender.

Exhibit 1 (Inducement Letter) at HLC00012-13 (emphasis added).

24.     None of those conditions occurred and no election by FCP ENTERTAINMENT was ever made to substitute Hal Luftig for HLC as a party to the 2007 Agreement.

25.     FCP ENTERTAINMENT and HLC mutually agreed to terminate the 2007 Agreement effective January 1, 2015.

26.     The 2007 Agreement contained an arbitration clause at paragraph 16 which, among other things, **expressly limited the powers** of the Arbitrator, stating: "The arbitrator shall not have the power to commit errors of law or legal reasoning ….":

INTENTIONALLY LEFT BLANK

27.     Paragraph 16 provides:

```
        16.  ARBITRATION. In the event of any dispute or
controversy arising under or in connection with this Agreement,
the parties hereto shall first promptly try in good faith to
settle such dispute or controversy by non-binding mediation
under the applicable rules of the American Arbitration
Association before resorting to arbitration.  In the event such
dispute or controversy remains unresolved in whole or in part
for a period of 30 days after it arises, the parties will settle
any remaining dispute or controversy exclusively by arbitration
before a single arbitrator in Los Angeles, California who is
familiar with theatrical matters and in accordance with the
rules of the American Arbitration Association then in effect.
The arbitrator shall have the power to grant all legal and
equitable remedies and award compensatory damages, but shall not
have the power to award punitive damages. The arbitrator shall
prepare in writing and provide the parties with the award,
including factual findings and the reasons on which the decision
is based. The arbitrator shall not have the power to commit

errors of law or legal reasoning, and the award may be vacated
or corrected for any such error. Judgment may be entered on the
arbitrator's award in any court having jurisdiction.
```

Exhibit 1 (2007 Agreement) at ¶16.

B.  **The Arbitration**

28.     On or about August 12, 2019, FCP ENTERTAINMENT commenced the

Arbitration against HLC for breach of contract and Hal Luftig for breach of fiduciary duty.

29.     Pursuant to the 2007 Agreement, the parties utilized the American Arbitration

Association ("AAA") but agreed for the arbitration to take place in New York City.

  i.    **The Interim Award Erroneously Finds the "Respondents" (Plural) Liable
         Even Though Hal Luftig Was Not a Party to the Contract.**

30.     On or about July 21, 2021, the Arbitrator issued an Interim Award determining

certain issues of liability, and noting that various issues remained to be determined and that a

Final Award would be forthcoming.  *See* Exhibit 2 (Interim Award).

31.     The Interim Award stated that "Respondents" had breached the 2007

Agreement:

> It appears that it was clear to Luftig that HLC had a legal obligation to pay
> Trepp [FCP] his 55% share of net income from Kinky Boots paid through
> the Waterfall Provisions of the Paragraph 6 of the 2007 Agreement.  It is
> clear to this Arbitrator that the Respondents are legally obligated to do so.
> By failing to do so, I find that the Respondents have breached the
> Agreement.

Exhibit 2 (Interim Award) at 11.

32.     Respondents Hal Luftig and HLC suspected that the Interim Award contained a

clerical error in providing that "Respondents" (plural) had breached the 2007 Agreement, and

that the Arbitrator had actually meant to find against only HLC, the contracting party to the 2007

Agreement, and not against Hal Luftig individually, given that he was not a party to the 2007

Agreement and was not the subject of FCP ENTERTAINMENT's breach of contract claim.

33.     The Respondents' suspicions were based on the record of the arbitration which

made clear that Hal Luftig was not a party to the 2007 Agreement and, while he was a signatory

to the Inducement Letter, FCP ENTERTAINMENT had never made an election to substitute him

individually for HLC as a party to the 2007 Agreement.

34.     During the arbitration, FCP ENTERTAINMENT had repeatedly and expressly

emphasized that the 2007 Agreement was between FCP ENTERTAINMENT and HLC—and *not*

Hal Luftig individually.  This precise point had taken center stage in the parties' legal arguments

at arbitration and in post-arbitration briefing, with respect to the application of a California

statute, California Business and Professions Code section 16600 ("Section 16600").

      ii.    **FCP ENTERTAINMENT Stressed During the Arbitration that the 2007 Agreement Was Between FCP ENTERTAINMENT and HLC – and Not Hal Luftig Individually.**

35.      Section 16600 voids certain agreements that limit an individual's ability to engage in certain business activities and competition[3].

36.      The 2007 Agreement designated HLC as an independent contractor (Exhibit 1 at ¶14) and also provided, with certain qualifications, restrictions as to HLC's and Hal Luftig's ability to engage in any competing business because HLC agreed "to furnish the services of Luftig on a full time exclusive basis …."

37.      In the May 2021 arbitration session preceding the Interim Award, FCP ENTERTAINMENT and Warren Trepp (its owner) maintained that the so-called "exclusive services/non-compete" provision in Paragraph 1 of the 2007 Agreement meant that HLC and Hal Luftig in particular could not engage in any theatrical business or endeavors except on behalf of FCP ENTERTAINMENT and, as a result, under Paragraph 6, any and all income earned by HLC from 2007-2014 constitutes "LLC Income" belonging to FCP ENTERTAINMENT.

38.      At the Hearing, Trepp was asked: "As long as it is live theatrical on or off Broadway, it's not allowed; is that your position?"  He answered: "Yes."  5/26 Tr. at 9; see also 5/24 Tr. at 54.  When asked "Does this mean no theatrical endeavors?" Trepp responded unequivocally, "Right."  *Id.*  The Arbitrator asked: "[I]s your understanding that Mr. Luftig or his companies could be involved in theater as long as the theater wasn't competitive with the theater shows that were part of this?" Trepp: "No he couldn't do anything related to the theatrical endeavor, period."  5/24 at 54-55.  With regard to revenue received by HLC, Trepp was asked:

---

[3] California Business and Professions Code Section 16600 provides: "Except as provided in this chapter, every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void."

"And if there were to be a theatrical endeavor then, or some activity on or off Broadway, it's your position, I assume, and I want you to confirm, that any revenue whatsoever derived from that activity by Mr. Luftig would be, in your view, LLC income; is that right?" Trepp answered: "Yes."  5/26 Tr. at 9.  The Arbitrator asked: "Is there any – any way that he [Hal Luftig] can make money as an independent contractor in the theater world that is not LLC income?"  Trepp responded: "He doesn't have the ability to do that."  *Id.* at 11-12.  *See* Exhibit 3 (hearing transcript excerpts).

39.     Such testimony by FCP ENTERTAINMENT's owner made it clear that it was FCP ENTERTAINMENT's and Warren Trepp's intent to restrain Hal Luftig, an individual, from "engaging in a lawful profession, trade, or business of any kind".  Such an interpretation would void the 2007 Agreement for violation of Section 16600.

40.     Hal Luftig and HLC raised this statutory violation of Section 16600 in closing arguments and fully briefed the issue in their Post-Arbitration Brief.  *See* Exhibit 4 (HLC and Hal Luftig's Post-Arbitration Brief) at 2-7; *FaZe Clan Inc. v. Tenney*, 467 F.Supp.3d 180, 187-89 (S.D.N.Y. 2020).

41.     This legal conundrum put FCP ENTERTAINMENT on the horns of a dilemma: **either the 2007 Agreement is between FCP ENTERTAINMENT and HLC, in which case Hal Luftig as an individual is not a party to the contract and cannot be liable for its breach; or FCP ENTERTAINMENT has substituted Hal Luftig as an individual for HLC as a party to the contract, in which case the 2007 Agreement is void for violation of Section 16600.**

42.     In response to this pivotal issue, FCP ENTERTAINMENT unequivocally took the position that the 2007 Agreement was between FCP ENTERTAINMENT and HLC—and not Hal Luftig, individually— and, based on that position, FCP ENTERTAINMENT expressly urged

the arbitrator that a new California Supreme Court ruling in *Ixchel Pharma, LLC v. Biogen, Inc.,* 9 Cal.5th 1130, 1137, 470 P.3d 571, 573 (2020) governed the issue (because it addressed contractual restrictions between business entities rather than between a business and a natural person) and permitted an interpretation of the 2007 Agreement that did not violate Section 16600.  *See* Exhibit 5 (FCP ENTERTAINMENT's Post-Hearing Brief).

43.     FCP ENTERTAINMENT and Warren Trepp made their choice and took the definitive position that: "The 2007 Agreement is not an employment agreement.  Rather, it is an agreement **between two sophisticated businesses** designed for the purpose of giving HLC compensation for delivering to FCP ENTERTAINMENT investment opportunities in live theater.  **The Agreement is between HLC and FCP, and not Luftig individually.**"  *Id.* at 10:20-24 (emphasis added).

44.     Relying on FCP ENTERTAINMENT's arguments, the Arbitrator analyzed the Section 16600 issues and held: "Based on the controlling authority of *Ixchel* and the evidence presented at arbitration, I conclude that the restrictions contained in the 2007 Agreement between FCP ENTERTAINMENT and HLC are governed by the "reasonableness" standard set forth in *Ixchel*."  Exhibit 2 (Interim Award) at 3-4.

45.     FCP ENTERTAINMENT thus convinced the Arbitrator that the 2007 Agreement was between two businesses -- FCP ENTERTAINMENT and HLC -- and hence not violative of Section 16600.

   **iii.     FCP ENTERTAINMENT Failed to Ever Make, Advance, or Support Alter Ego or Piercing the Corporate Veil Allegations Sufficient to Warrant Finding Hal Luftig Liable for Breach of Contract.**

46.     FCP ENTERTAINMENT never made or advanced any alter ego allegations.  FCP ENTERTAINMENT made no arguments and adduced no evidence whatsoever concerning piercing HLC's corporate veil before or after the May arbitration hearing.  FCP

ENTERTAINMENT offered no evidence that the conditions precedent to trigger the "substitution" provision in paragraph 5 of the Inducement Letter ever occurred or that FCP ENTERTAINMENT made any election to substitute Hal Luftig, as an individual, for HLC as a party to the 2007 Agreement.

47.     In neither the Interim nor Final Awards did the Arbitrator analyze or provide any explanation as to whether FCP ENTERTAINMENT can pierce the corporate veil to hold Mr. Luftig personally liable under the 2007 Agreement.

48.     Any qualified arbitrator would be aware of the basic legal principle of piercing the corporate veil.  Indeed, this Arbitrator was aware of this legal principle as evidenced by his Interim Order in which he evaluates piercing the corporate veil in terms of whether Warren Trepp has cause for concern that he might be found to be an alter ego of FCP ENTERTAINMENT. *See* Exhibit 2 (Interim Award) at 9.

49.     Despite the Arbitrator's understanding of the piercing the corporate veil doctrine, he disregarded the doctrine when finding Mr. Luftig liable for breach of a contract to which he was not a party, instead lumping together "Respondents" without legal reason.

50.     Given that there is no evidentiary basis to pierce the corporate veil, had the Arbitrator appropriately applied the doctrine Mr. Luftig could not be held liable for breach of the 2007 Agreement.

51.     Nevertheless, the Interim Award provided that "Respondents" (plural) had breached the agreement.  *See* Exhibit 2 (Interim Award) at 11.

      **iv.**    **The Arbitrator's Refusal to Clarify "Respondents" (Plural) Should be "Respondent" (Singular, Meaning HLC) in the Interim Award Even Though Hal Luftig Was Not a Party to the 2007 Agreement.**

52.     As it remained unclear to counsel for HLC and Hal Luftig whether the reference to "respondents" was a mere typographical error, particularly given FCP ENTERTAINMENTS'

admissions that Hal Luftig was not a party to the contract, counsel for the Luftig parties issued a

"Question for Clarification" to the Arbitrator, as follows:

> Dear Mr. Donnelly:
>
> In your Interim Award, you analyzed California Business and Professions Code Section 16600 and concluded there was no violation of that rule because the 2007 Agreement was between FCP and HLC, i.e., it was a commercial contract between two businesses . . . . "The 2007 Agreement is . . . an agreement between two sophisticated businesses designed for the purpose of giving HLC compensation for delivering to FCP investment opportunities in live theater. The Agreement is between HLC and FCP, *and not Luftig individually*." [Exhibit 5 at 10:20-24.] . . .
>
> . . . Simply stated, you decided Hal Luftig was not a party to the 2007 Agreement; rather it was his company HLC.
>
> Question for Clarification.
>
> In conformance with your Section 16600 reasoning, please clarify the following statement in the Interim Award, Paragraph 1, at 21: "Respondents breached the Agreement by failing to pay the 55% share of LLC income due to FCP …." Specifically, did you mean *both* Respondents or *just Respondent HLC* – which together with FCP you concluded was the only other contracting party to the 2007 Agreement?

*See* Exhibit 6 (Question for Clarification) (emphasis in original).

53.     At the Arbitrators' direction, on October 26, 2021, the parties sent a series of

email briefs to the Arbitrator laying out their positions regarding the Question for Clarification.

*See* Exhibits 7-10 (copies of those emails).

54.     In its email brief on the issue, FCP ENTERTAINMENT departed from its

original, definitive statement that "**The Agreement is between HLC and FCP**

**[ENTERTAINMENT], and not Luftig individually.**"  Instead, FCP ENTERTAINMENT

argued that paragraph 5 of the Inducement Letter provides "to the extent that HLC fails to

perform any portion of the Agreement, Luftig is substituted as a direct party for purposes of the

breach.  As a result of the inducement letter, both HLC and Luftig are jointly and severally liable for the breach."  Exhibit 7 at 1.

55.     HLC and Hal Luftig pointed out that FCP ENTERTAINMENT had never made any election to substitute Hal Luftig, an individual, for HLC as a party to the 2007 Agreement, rendering Paragraph 5 of the Inducement Letter irrelevant.  Exhibit 8 at 2.  To the contrary, FCP ENTERTAINMENT always has contended that HLC is liable for breach of the 2007 Agreement.

56.     Moreover, FCP ENTERTAINMENT currently has pending a Petition to Confirm the Arbitrator's Award *against HLC* and Hal Luftig, further demonstrating that FCP ENTERTAINMENT never made any election to substitute Hal Luftig individually for HLC as the contracting party to the 2007 Agreement.

57.     Further, FCP ENTERTAINMENT never made any allegations of alter ego; and FCP ENTERTAINMENT submitted not an iota of evidence related to potentially piercing the corporate veil of HLC.

58.     Not understanding or ignoring the rule of law, on November 4, 2021 the Arbitrator held "My Interim Order is correct as written. Both Respondents (*i.e.,* Hal Luftig Company, Inc and Hal Luftig as an individual) are individually and severally liable for the damages described in my Interim Order."  Exhibit 11 (Arbitrator's November 4, 2021 Order). (The Arbitrator later changed "individually and severally" to "jointly and severally".)  That was the entirety of the Arbitrator's response to the issue and the parties' submissions and arguments.

59.     The Arbitrator exceeded the power vested in him by the Arbitration clause of the 2007 Agreement by making an error of law, exceeded his power by acting in manifest disregard of the basic law of contracts, and exceeded the powers of an arbitrator under the Federal and California Arbitration Acts.

v.   **The Final Award Reiterating the Arbitrator's Manifest Disregard of the Law and Exceeding His Power.**

60.     The Arbitrator issued his Final Award on April 1, 2022 incorporating his Interim Award and holding that "both Respondents (i.e. Hal Luftig Company, Inc. and Hal Luftig, as an individual, are jointly and severally liable for the damages described in the Interim Award and therefore also in the Final Award."  Exhibit 2 (Final Award) at 4.

61.     The Final Award assigns damages for the first time to the breach of contract claim in the amount of $2,638,925.78, to be born jointly and severally by HLC and Hal Luftig.  *Id.*

62.     The Final Award does not set forth any legal basis for finding Hal Luftig individually liable for breach of the 2007 Agreement to which he is not a party.

63.      Pursuant to 9 U.S.C. § 12, Petitioner Hal Luftig has brought this action within three months after the Final Award was delivered.

64.     The Final Award should be vacated under Federal Arbitration Act ("FAA"), 9 U.S.C. § 10 and under the California Arbitration Act for each of the two independent grounds stated in Paragraphs 7(a) and (b), above.

65.     Petitioner Hal Luftig has no adequate remedy at law, because only a judgment vacating the Final Award insofar as the Arbitrator determined Hal Luftig to be personally liable for breach of a contract to which he was not a party will provide the relief required under these circumstances.

## COUNT ONE
## <u>(Vacatur of the Final Award for Manifest Disregard)</u>

66.     Petitioners repeat and reallege paragraphs 1 through 65 hereof, as if fully set forth within.

67.    The Arbitrator ignored fundamental contract law as well as admissions by FCP
ENTERTAINMENT in ruling that Hal Luftig is personally liable for breach of the 2007
Agreement to which he is not a party.

68.    A person who is not a party to a contract cannot be held liable for its breach. This
fundamental principle of basic contract law is well-established and clearly applicable to the facts
and circumstances surrounding Hal Luftig's purported liability in the underlying matter.

69.    The Arbitrator was fully aware of the existence of the law.

70.    As demonstrated by the email exchanges and requests for clarification of the
Interim Award's finding Hal Luftig liable for breach of contract, the Arbitrator was fully aware
of FCP ENTERTAINMENT's original position that the 2007 Agreement was between FCP
ENTERTAINMENT and HLC and then, without any evidentiary basis whatsoever, found Hal
Luftig liable for breach of a contract to which he was not a party.

71.    The Arbitrator chose to ignore the basic contract principles and FCP
ENTERTAINMENT's judicial admissions or paid no attention to them.

72.    As a result of the Arbitrator's manifest disregard of the law, the Arbitrator found
Hal Luftig personally liable to FCP ENTERTAINMENT as set forth in the Final Award.

73.    By reason of the foregoing, this Court should issue an order vacating the Final
Award, annexed hereto as Exhibit 2 insofar as the Arbitrator manifestly disregarded the law by
finding petitioner Hal Luftig personally liable for breach of the 2007 Agreement.

## COUNT TWO
## (Vacatur of the Final Award for Exceeding Express Powers)

74.    Petitioners repeat and reallege paragraphs 1 through 73 hereof, as if fully set forth
within.

75.    The 2007 Agreement also expressly provides that "[t]he Arbitrator shall not have the power to commit errors of law or legal reasoning …."

76.    Under basic contract principles as well as the judicial admissions of FCP ENTERTAINMENT, the 2007 Agreement was between two commercial businesses.

77.    The Arbitrator made an error of law and violated basic contract principles by finding Hal Luftig individually liable for breach of the 2007 Agreement to which he was not a party.  Even if the Arbitrator accepted FCP ENTERTAINMENT's radical change in its fundamental argument that Hal Luftig is not a party to the contract, by arguing that it somehow substituted Hal Luftig in place of HLC, the Arbitrator's decision is nevertheless an error of law in direct violation of Section 16600.

78.    The Arbitrator therefore erred in finding Hal Luftig personally liable to respondent FCP ENTERTAINMENT.  The Arbitrator did not have, nor did he provide any legal reasoning for finding Hal Luftig personally liable.

79.    The Arbitrator therefore exceeded his authority as set forth by the 2007 Agreement by making an error of law or legal reasoning.  *See also* Exhibit 1 at ¶12 (2007 Agreement governed by California); *Cable Connection, Inc. v. DIRECTV, Inc.*, 44 Cal.4th 1334, 1340 (2008) (holding that, under California law, parties' contractual agreement that "[t]he arbitrators shall not have the power to commit errors of law or legal reasoning, and the award may be vacated or corrected on appeal to a court of competent jurisdiction for any such error" was enforceable and authorized legal challenge to arbitrator's award based on such error of law); *see also Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 590 (2008) (9 U.S.C. §§ 10 and 11 apply to judicial review under the FAA, but do not foreclose broader review of an arbitrator's decision when authorized under state law governing the parties' relationship).

80.     By reason of the foregoing, this Court should issue an order vacating the Final Award (*see* Exhibit 2) insofar as the Arbitrator exceeded his contractually expressed powers by finding petitioner Hal Luftig personally liable for breach of the 2007 Agreement to which he was not a party.

**WHEREFORE**, Petitioners respectfully request that this Court:

(i)  Issue an order as a result of the Arbitrator's manifest disregard of the law, vacating the Final Award insofar as it finds petitioner Hal Luftig individually liable for breach of contract and damages to be paid to FCP ENTERTAINMENT; and

(ii) Issue an order pursuant to FAA, 9 U.S.C. § 10(a)(4) and California law vacating the Final Award insofar as it finds petitioner Hal Luftig individually liable for breach of contract and damages awarded to FCP ENTERTAINMENT;

(iii) Award the Petitioner Hal Luftig such other and further relief as this Court deems just and proper in the circumstances.

Dated: May 19, 2022
       Uniondale, New York

Respectfully submitted,

RUSKIN MOSCOU FALTISCHEK, P.C.


By:     *s/ Melissa Sanderleaf*
        Thomas A. Telesca
        Melissa Sanderleaf
        *Attorney for Petitioner Hal Luftig*
        1425 RXR Plaza
        Uniondale, New York 11566-1425
        (516) 663-6600

MARTIN J. FOLEY PLC
Martin J. Foley
*Attorney for Petitioner Hal Luftig*
*Pro hac vice application to be filed*
601 S. Figueroa St.
Ste. 2000
Los Angeles, CA 90017
martin@mjfoleylaw.com

JASSY VICK CAROLAN LLP
Kevin L. Vick
*Attorney for Petitioner Hal Luftig*
*Pro hac vice application to be filed*
335 S. Grand Ave., Suite 2450
Los Angeles, California 90071
(310) 870-7048
kvick@jassyvick.com